MEIER, A MINOR, ET AL., APPELLANTS, *v.* EDWARDS ET AL., APPELLEES.

(No. 10143—Decided July 10, 1967.)

*Messrs. McCaslin, Imbus & McCaslin* and *Mr. G. J. De-Michelis,* for appellants.
*Messrs, Dolle, O'Donnell, Cash, Fee & Hahn,* for appellees.

DOYLE, J. This is an appeal on questions of law by the plaintiffs from a judgment of the Court of Common Pleas of Hamilton County, which court, upon motion of the defendants, at the conclusion of all the evidence in an action for damages growing out of personal injuries, for judgment in their favor, granted the motion, withdrew the case from consideration of the jury, and entered judgment for the defendants.

The primary questions before this court on the plaintiffs' appeal are (1) whether the plaintiff, David Meier, was a guest of the defendant Donald R. Edwards, Jr., as a matter of law, within the limits of Section 4515.02, Revised Code, or (2) if the plaintiff was a guest within the statute, whether the defendant

was not guilty, as a matter of law, of willful or wanton misconduct.

It is here observed that the plaintiffs are father and son. The son, David Meier, a minor, is suing for damages for personal injuries. The father, Harry C. Meier, is suing for hospital, medical and surgical expenses incurred on behalf of his son, as well as for loss of services. The defendants are likewise father and son. Donald R. Edwards, Jr., a minor, is charged with the unlawful operation of an automobile in which David Meier was riding, and his father, Donald R. Edwards, Sr., is charged with the claimed misconduct of his minor son on the ground that the son was less than eighteen years of age and "was the holder of an Ohio driver's license obtained by an application therefor signed by the defendant [father] Donald R. Edwards, Sr. * * *."

The parties will be designated as plaintiff and defendant, or appellant and appellee.

A reasonable conclusion may be drawn from the testimony that the boys had discussed with each other the possibility of taking turns in driving to a doctor's office where they were each receiving treatment as patients, and that Meier, Jr., had arranged with the doctor for his appointment to fall on the same day as that of Edwards, Jr. On the day of April 8, 1964, the plaintiff, Meier, Jr., drove his car, and Edwards, Jr., accompanied him on their trip to the office. At this time, Edwards, Jr., said that he would drive for their next appointment if he could get the family car.

The testimony of the plaintiff continues as follows:

"Well first of all I said that 'Why don't we exchange rides, as far as the future is concerned, appointments, and then I will change my appointment from Tuesdays to Wednesdays to match yours,' and he said 'all right.' So then after that he said 'I can't always guarantee that I will be able to get the car, you know, every other appointment, so if I could get the car two weeks in a row I will drive those two weeks, and then you can make up for it in the following two.' So then it would work out equally. You know the exchange of rides would be equally driven by each person."

The next appointment with the doctor for which riding arrangements were made came on May 20, 1964, shortly over a

month after their previous ride together. This time Edwards, Jr,. drove after the following conversation:

"* * * the night before I [Meier, Jr.] had called him [Edwards, Jr.] up and asked him if he could drive. He said 'No,' that his car was going to be used, I believe, by his mother and he said he couldn't drive; so I said 'Well, O. K., I will drive this time and you can drive two times after this one' and he said 'all right.' "

It appears, however, that Edwards, Jr., did obtain the family car, drove it to school, and later proceeded with Meier, Jr., and another passenger, towards the doctor's office when they all experienced the serious highway accident which gave rise to this litigation.

The appellant, Meier, presents as an authority for his position that he rode as a passenger the case of *Lisner, a Minor,* v. *Faust,* 168 Ohio St. 346, where the Supreme Court, in the second paragraph of the syllabus, says:

"A child is a 'paying passenger' and not merely a 'guest' while he is being transported from his home to his school in an automobile driven by one of a group of parents who have entered into a definite mutual agreement to perform their proportionate share of the service of providing such transportation for their own children."

Several years subsequent to this decision, the Supreme Court decided the case of *Burrow, Admx.,* v. *Porterfield, Admr.,* 171 Ohio St. 28, in which the opinion writer discussed the various leading Ohio cases; and in his summary, at page 35, stated that "the status of a rider in a motor vehicle may properly be ascertained only by careful analysis of the relationship which exists between rider and driver and a similar study of any benefits to the parties accruing as a result of such relationship. Of course, such analysis must involve a case-by-case determination."

As we view the evidence of the discussion between the boys relating to transportation, we find no contract of sufficient certainty to make it enforceable, assuming that these minors could enter into an enforceable contract. Certainly, the relationship of a passenger for hire was not established. It appears to be only a promise to exchange social amenities if a family

car was available, when one of the boys would drive and the other boy would, in the future, try to equal the amount of driving. There is no evidence of the extent of the future medical treatment of either of the boys, but there is evidence that one of them had more appointments with the doctor than the other.

For the reason that the trial court decided the issues created by the pleadings and the evidence, as a matter of law, we are required to give the appellant's evidence its most favorable interpretation and to accept, as established, every material fact which the evidence tends to prove. This concept of appellate action is well established and needs no citation of authority.

The Ohio "guest statute" (Section 4515.02, Revised Code) is:

"The owner, operator, or person responsible for the operation of a motor vehicle shall not be liable for loss or damage arising from injuries to or death of a guest, resulting from the operation of said motor vehicle, while such guest is being transported *without payment therefor* in or upon said motor vehicle, unless such injuries or death are caused by the *willful or wanton* misconduct of such operator, owner, or person responsible for the operation of said motor vehicle." (Emphasis ours.)

An injured rider seeking an avoidance of this statute has been held to have the burden of establishing his non-guest position in relation to the driver. He must establish that he was being transported with "payment therefor." *Hasbrook* v. *Wingate*, 152 Ohio St. 50, and *Burrow, Admx.,* v. *Porterfield, Admr.,* 171 Ohio St. 28.

The testimony of the plaintiff established the facts that he and Donald R. Edwards, Jr., were schoolmates in Princeton High School, and were being treated by Dr. A. Kindel, Jr., dermatologist. The two boys, after finding that they were each receiving treatment from the same doctor, engaged in the conversation stated above relating to transportation to and from the doctor's office, and it is reasonable to conclude that the arrangement meant only that upon express invitation of the boy who could get a car to the other boy, he should ride as his guest "without payment therefor" to the office of the doctor. Certainly, no contractual duty could arise here. This relationship fails to give rise to anything other than a "guest" relationship under

the statute, and the trial court did not err in so concluding. It has been said under similar circumstances, and we concur, that practically every interchange of amenities and hospitality when carefully analyzed may appear to be a *quid pro quo* arrangement, but this does not prevent the relationship from being that of host and guest.

We continue now to the problem of willful and wanton misconduct, which question was held by the trial court adverse to the claim of the appellant.

It has been repeatedly stated in leading Ohio cases that excessive speed in the operation of an automobile is not of itself sufficient to constitute an act of wantonness. *Akers* v. *Stirn*, 136 Ohio St. 245; and *Billings, Admx.,* v. *Carroll*, 171 Ohio St. 167. In the instant case, there is ample evidence of excessive speed in the driver's effort to timely make the doctor's appointment in which each boy had an interest. We fail to find, however, evidence from which reasonable inferences may be drawn that the driver of the car came within any of the specific categories of wantonness. There is not shown to have existed an unusually dangerous situation, nor any consciousness on the part of the driver that his driving would, in common probability, result in injury, or that he drove without any care in utter heedlessness of his passengers' jeopardy, or in utter disregard of his passengers' safety. Insofar as the record shows, the passengers made no complaint of the driving and, seemingly, acquiesced in the speedy trip to meet the appointment deadline. On this issue, while there is evidence of negligence, we find no evidence of willful or wanton misconduct.

Finding no error of a prejudicial character, as alleged in the assignment of errors, we direct an affirmance of the judgment.

*Judgment affirmed.*

Brenneman, P. J., and Hunsicker, J., concur.

Brenneman, P. J., Hunsicker and Doyle, JJ., of the Ninth Appellate District, sitting by assignment in the First Appellate District.